## TULSA ENTERTAINMENT CO. et al. v. GREENLEES.

No. 10362—Opinion Filed Feb. 28, 1922.

(Syllabus.)

**1. Pleading—Petition—Construction as a Whole.**

The defendants in an action will not be permitted to pick out a sentence or a part of a sentence in the plaintiff's petition and thereby limit their liability by a construction of the part so selected by them, but the court will construe the petition as a whole. If one paragraph deals with a specific subject or question, such paragraph will be construed as a whole.

**2. Theatres and Shows—Baseball Parks—Duty to Keep in Safe Condition—Liability for Injuries to Patrons.**

The owner of a baseball park to which the public is admitted, upon payment of an admission fee, for the purpose of witnessing baseball games or other athletic contests, owes a duty to the public to use a high degree of care to keep each part of such park in a safe condition for the use to which the several parts are put, and, if on account of such owner's failure so to do, any of the patrons of such park are injured, the owner is liable in damages for such injury.

**3. Same—Unsafe Seats—Liability of Owner Permitting Another to Use Park.**

Where the owner of such baseball park either leases, lets, or permits some other person to use said park for the same purposes for which it was used by such owner, and at the time of letting or permitting the other person to so use such park the seats are in a defective condition and this

is known to the owner, and on account of this defective condition of the seats, they collapse and some of the people occupying the seats are thereby injured, such owner is liable in damages to the person or persons so injured. Under this state of facts the fact that the owner of such park donates the use of same or lets it without any monetary compensation paid to such owner by the persons so using it, does not thereby make the patrons of such park licensees on the premises and change the liability of the owner.

**4. Same—Instructions.**

The instructions given by the court examined, and held, that no error was committed in giving the instructions complained of.

**5. Same—Requested Instructions.**

The instructions requested by plaintiff in error, and refused by the court examined, and held, that no error was committed in refusing to give the requested instructions.

**6. Same— Verdict for Damages — Sufficiency of Evidence.**

The evidence examined, and held, that it reasonably tends to support the verdict of the jury. Therefore, the verdict will not be disturbed on appeal. Midland Valley Railroad Company v. Lawhorn, 81 Okla. 288, 198 Pac. 586.

Error from District Court, Tulsa County; N. E. McNeill, Judge.

Action by Charles A. Greenlees against the Tulsa Entertainment Company and others. Verdict and judgment for the plaintiff and against the Tulsa Entertainment Company. The Tulsa Entertainment Company appeals. Affirmed.

Chas. E. Bush, A. F. Moss, and L. G. Owen, for plaintiff in error.

Horace Speed and Mason & Honnold, for defendant in error.

MILLER, J. This action was commenced in the district court of Tulsa county by Charles A. Greenlees, as plaintiff, against the Tulsa Entertainment Company, a corporation, Arthur B. Reece, and certain others, as defendants.

On the trial of the case a demurrer to the evidence was sustained as to certain of the defendants. The case was submitted to the jury as to the remaining defendants, which returned a verdict in favor of the plaintiff and against the Tulsa Entertainment Company, a corporation, and Arthur B. Reece for the sum of $5,000 damages. Thereafter these defendants filed their motion for a new trial and moved for judgment in their favor and against the plaintiff non obstante veredicto. These motions were overruled by the court and judgment rendered in accord with the verdict. The defendant Tulsa Entertainment Company perfected this appeal, and appears here as plaintiff in error.

The facts, briefly stated, are as follows: During the fall of 1913, two baseball teams, one known as the Chicago Wh'te Sox, the other as the New York Giants, made a tour of the world, playing exhibition baseball games. Arthur B. Reece and his associates negotiated with the managers of these teams to have an exhibition game played at Tulsa. They were not the owners of any baseball park where such game could be conveniently played or where comfortable accommodations could be furnished the public to witness the game. They went to Morris McGrath, one of the defendants, who was president of the Tulsa Entertainment Company, the owner of the grounds and ball park referred to in this action. At the time complained of the legal title to the grounds stood in the name of Charles A. Elliff, who held it as trustee for the Tulsa Entertainment Company; he thereafter conveyed the legal title to the Tulsa Entertainment Company. Mr. Morris McGrath consented that Reece and his associates might have the use of the grounds, and they completed their arrangements to have the exhibition baseball game played at Tulsa.

Some of the officers and parties interested in the Tulsa Street Railway Company were officers of and interested in the Tulsa Entertainment Company. Morris McGrath, the president of the Tulsa Entertainment Company, was also connected with the Tulsa Street Railway Company. The baseball grounds were on one of the car lines of the Tulsa Street Railway Company.

During their negotiations Mr. McGrath had asked for ten per cent. of the gate receipts for the use of the grounds, but Mr. Reece had urged the proposition that the Tulsa Street Railway Company would greatly benefit by the fares collected from the large number of people who would attend the game, and Mr. McGrath had finally consented that Reece and his associates should have the use of the grounds without payment of any sum of money or division of the gate receipts.

Mr. Reece called the attention of Mr. McGrath to the defective condition of the seats in the grandstand and bleachers, but Mr. McGrath replied that the Tulsa Street Railway Company would not spend any

money on repairs, but that the repairs would have to be made by Mr. Reece. Sometime before the game was played Mr. Reece bought out his associates in the enterprise, and they were not thereafter interested in it.

On the 28th day of October, 1913, the baseball game was played on the grounds owned by the Tulsa Entertainment Company. Its gates were thrown open to admit any and all of the public who purchased admission tickets. There were certain individuals in charge to direct the holders of tickets to the part of the grandstand and bleachers that such holder or holders should occupy during the time the game was being played. The plaintiff, Charles A. Greenlees, was directed to occupy a seat in that part of the arena known as the bleachers. While he so occupied a seat in the bleachers, the particular section where he was seated broke, gave way, and he was precipitated to the ground a distance of some 15 feet or more, and thereby broke both of his ankles and was otherwise bruised, shocked, and injured.

The plaintiff in error sets out 14 assignments of error, and in its brief discusses the various assignments of error under three heads. We will consider them in the order presented in the brief of plaintiff in error.

"The petition alleges that the bleachers on which the plaintiff sat were overcrowded and were crowded beyond safety and to the extent that they were dangerous. This allegation of the petition was specifically admitted in the answer of the defendant. Thereby the overcrowding of the bleachers became a fact in the action."

In presenting this proposition the Tulsa Entertainment Company picked out a part of a paragraph in the petition of the plaintiff below and admitted this particular part to be true. Having admitted this fact, the plaintiff in error contends that it was not responsible for the overcrowding of the bleachers, and it is therefore relieved of liability. A petition, like any other written instrument, must be construed as a whole. A person could take almost any instrument and pick out a sentence or part of a sentence which, disconnected from all other reference to the instrument, would be antagonistic to the intent and purpose of the instrument construed as a whole. The plaintiff in error has culled a part of a sentence out of the fourth paragraph of the petition, which paragraph reads as follows:

"Fourth: That the said baseball ground was at the time aforesaid and for a number of years prior thereto had been to the knowledge of the defendants a place of public entertainment resorted to by a large number of people for the purpose of witnessing athletic entertainments and other sports and amusements; that the stands and bleachers thereof had been to the knowledge of said defendants unsafe and insecure for a long time prior to the said 28th day of October, 1913, and had been and were to their knowledge inadequately, negligently, and carelessly constructed and maintained; that they were made and constructed of timbers of a size too small and of a kind of wood too weak and too much subject to decay for the purpose for which it was used; that the said stands and bleachers upon the occasion aforesaid and particularly the bleachers in which the plaintiff sat were crowded beyond their seating capacity and beyond the point of safety and to such an extent as to render it unsafe for the persons occupying the same, all to the knowledge of the defendants; that the aforesaid injuries of the plaintiff were occasioned solely and wholly by the negligence and want of care of the defendants and that thereby the plaintiff was injured and damaged to the extent and in the sum of thirty thousand dollars ($30,000.00) in addition to the expenses of medical treatment which he had been put to and in the future will be put."

In this paragraph the plaintiff alleged the defective condition of the grandstand and bleachers; that the same were negligently and carelessly constructed; the size of the timbers were too small; the timbers too weak and badly decayed and the bleachers were crowded beyond their seating capacity and beyond the point of safety. The reason they were crowded beyond their seating capacity and point of safety was because of the defective condition of the bleachers. If the bleachers had been substantially built with timbers of sufficient size and strength and all defective timbers removed and replaced with perfectly good timbers of sufficient size and strength, then the bleachers would not have been crowded beyond the point of safety. The evidence is undisputed that many of the posts and supports in the bleachers were badly decayed. That the Tulsa Entertainment Company was notified of this fact, but refused to make any repairs because it was not receiving any monetary compensation for the use of the ball park on this occasion. That Reece purchased lumber and had some repairs made. That in making the repairs Reece used lumber of smaller dimensions than should have been used and smaller than was originally used in constructing the bleachers.

The evidence fully sustained the allegations in the fourth paragraph of the petition of plaintiff, and the paragraph must be construed as a whole, and when so construed it clearly appears the first proposition of plaintiff in error is not well founded.

"2. Reece, or Reece and his associates, were licensees of the Tulsa Entertainment Company, and the only duty which the Tulsa Entertainment Company was under to Reece, or Reece and his associates, and those whom Reece, or Reece and his associates, invited there, was not to injure them by wanton negligence."

It does not appear that the Tulsa Entertainment Company received any compensation in money for the use of the ball park, grandstand, and bleachers on this particular occasion, but its obligation to the public is not measured by, or dependent upon, the monetary consideration it may receive or expect to receive as compensation for its use. The Tulsa Entertainment Company had laid out the ball park and grounds to induce and facilitate athletic contests, such as playing the great American game of baseball. The grandstand and bleachers had been erected by the Tulsa Entertainment Company for the convenience and accommodation of persons who wished to view these athletic sports and games of baseball. By reason of the baseball games being played on these grounds from time to time and the seats prepared for the accommodation of persons desiring to witness the game, the public was invited to attend and occupy seats in the grandstand or bleachers upon payment of the admission price therefor. Having for a long period of time invited the public to come to this amusement park and witness ball games or other athletic contests, this invitation to the public continued until withdrawn by the plaintiff in error in such a way that the general public knew it had been withdrawn. When it consented to or permitted its gates to be opened to receive, upon payment of the admission fee, all persons who wished to attend and witness a game of baseball about to be played, this constituted an invitation to attend. It was not incumbent upon the defendant in error or the general public to inquire whether or not they were paying their admission price to the Tulsa Entertainment Company or a lessee or licensee of the Tulsa Entertainment Company. The plaintiff in error was extending the invitation to the public to attend, and its duty to the public remained the same whether it received the admission fees or donated the same to someone else. Having invited the public to attend, it was incumbent upon it either to put the bleachers in a safe condition, or see that they were put in a safe condition, before the public was permitted to occupy them. As those who attended were there on the invitation of the Tulsa Entertainment Company, and not merely on the invitation of Reece and his associates, the limitation of liability contended for by plaintiff in error cannot be applied in this case.

"3. Under this heading, we shall attempt to point out to the court the error of the court in giving certain instructions, and in failing to give certain instructions requested by this defendant, and the court's misconception of the theory upon which plaintiff's cause of action was based, as is exhibited by the plaintiff's petition."

We have carefully examined and considered the instructions given by the court that are complained of and the requested instructions which the court refused to give and which are complained of by plaintiff in error. The evidence clearly shows a wanton disregard on the part of the plaintiff in error for the protection of the public who might attend to witness the baseball game played on the occasion of the injury to the defendant in error. It, in effect, said to Reece and his associates: "You may have the use of the grounds, but the Tulsa Entertainment Company will not spend one penny for the protection or safety of the public who attend. If the grandstand or bleachers need any repairs, you make such repairs as you care to; the Tulsa Entertainment Company is not concerned about the safety of the public." It was the unsafe condition of the bleachers that caused the injury, and in view of the liability resting upon the plaintiff in error as already set forth herein, we do not find there was any error committed in giving the instructions complained of or the refusal to give the instructions asked for by plaintiff in error and which were refused by the court. The evidence reasonably tends to support the verdict of the jury, and we do not think it would serve any good purpose to elaborate in this opinion on each of the numerous instructions complained of.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

HARRISON, C. J., and KANE, JOHNSON, and KENNAMER, JJ., concur.