# NORBERT W. RUEHLING v. AMERICAN LEGION PAVILION, INC.

96 N. W. (2d) 702.

May 29, 1959—No. 37,575.

*Schermer & Gensler* and *Richard W. Johnson,* for appellant.
*Lebens & McGuire* and *O'Connor, Green & Thomas,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial.

On September 29, 1956, defendant, American Legion Pavilion, Inc., a Minnesota corporation owning and managing a dance pavilion in the city of New Prague, allowed the pavilion to be used for a wedding dance. Accepting the evidence most favorable to the verdict,[1] it appears that plaintiff, Norbert Ruehling, arrived at the New Prague pavilion at about 10 p. m. Immediately upon his arrival and prior to entering the dance-hall, plaintiff was greeted by Donald Flicek, an 18-year-old man

---

[1] E. g., Priewe v. Bartz, 249 Minn. 488, 83 N. W. (2d) 116; 1 Dunnell, Dig. (3 ed.) § 415b.

standing in a group outside the pavilion near an exit door. Plaintiff testified that this group numbered 10 to 15 and that he had known Donald Flicek approximately 2 years. After the greeting, plaintiff, a 38-year-old bachelor, joined the group and was subjected to some teasing about girls. Flicek jerked plaintiff's necktie during the conversation although in a friendly manner. There is no evidence indicating bad feelings between Flicek and plaintiff. After spending about 20 to 40 minutes with the group, plaintiff left to enter the dancehall. When barely inside the door, he was called back by Flicek. Plaintiff rejoined the group and Flicek said, "There is a nice girl there." Plaintiff responded, "Kind of." Shortly thereafter Flicek moved behind plaintiff, grabbed his right hand and pulled it to plaintiff's left knocking plaintiff to the concrete sidewalk and injuring his knee. This action was completely unexpected by plaintiff. Subsequent to plaintiff's injury, however, he observed Flicek wrestling with another boy.

Defendant had employed three officers to police the dance, one of whom spent the majority of his time patrolling outside the premises. According to the testimony of defendant's secretary-treasurer, it was customary to allow a group of 10 to 15 teenagers to gather at the entrance to the ballroom if they are causing no disturbance but it was not customary to allow such a group to engage in "horseplay" for a period of 40 minutes. The only evidence of horseplay in the record is the pulling of plaintiff's tie, the accident involving plaintiff, and the *wrestling occurring after plaintiff's injury*.

The verdict below was for plaintiff in the sum of $11,000. Defendant appeals on two issues: (1) Whether the trial court erred in instructing the jury generally that if the plaintiff's story were true and if defendant's employees knew or in the exercise of reasonable care should have known "of the condition obtaining there," defendant may be found liable; (2) whether the evidence reasonably sustains the verdict.

Although defendant probably could prevail on the first issue since the instructions completely omitted reference to the foreseeability of injury to the defendant, we find it necessary to consider only the second issue.

Basic to liability of a keeper of premises is that negligence is predicated upon what should have been reasonably anticipated and not merely

upon what happened.[2] As stated in Johnson v. Amphitheatre Corp. 206 Minn. 282, 285, 288 N. W. 386, 387:

"* * * It is true that the operator of a public amusement place is not an insurer of the safety of patrons and is not responsible for unanticipated dangers created by some one of such patrons to the injury of another. But he is obligated to use ordinary care * * *."

The standard of ordinary care to be exercised by the operator of a public amusement place is that which would be exercised by a reasonably prudent person under the same or similar circumstances and does not require the taking of precautionary measures to avert a danger which a reasonable person would not anticipate as likely to happen. Plaintiff's complaint charges that defendant had allowed a person of known violent and disorderly propensities to come onto and remain on its premises. Were this allegation supported by evidence, plaintiff might sustain his verdict. On the contrary, the only evidence relating to whether or not Flicek possessed dangerous propensities was that of one of defendant's policemen who testified that during his 3 years' employment at ballroom dances he has never had occasion to discipline Flicek. Nor is there any evidence that defendant had notice of any facts from which he could reasonably foresee injury to plaintiff. The good-natured teasing and pulling of plaintiff's tie cannot be construed as evidence from which to anticipate violence. Obviously, the subsequent wrestling in which Flicek was involved was not a fact from which defendant could anticipate the prior injury to plaintiff.

The cases cited by plaintiff do not sustain his position. In each of these cases evidence existed from which the factfinder could conclude that defendant had notice of facts from which he could reasonably anticipate injury to a patron. Quinn v. Smith Co. (5 Cir.) 57 F. (2d) 784, was a case where an unruly and disorderly crowd of people engaged

---

[2]Connolly v. The Nicollet Hotel, 254 Minn. 373, 95 N. W. (2d) 657; Sylvester v. Northwestern Hospital, 236 Minn. 384, 53 N. W. (2d) 17; Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213; Landru v. Stensrud, 219 Minn. 227, 17 N. W. (2d) 322; Dunham v. Hubert W. White, Inc. 203 Minn. 82, 279 N. W. 839; Pfeifer v. Standard Gateway Theater, Inc. 259 Wis. 333, 48 N. W. (2d) 505; Fimple v. Archer Ballroom Co. 150 Neb. 681, 35 N. W. (2d) 680.

in pushing each other into defendant's swimming pool prior to the time plaintiff was likewise pushed into the pool and injured. Similarly, in Hill v. Merrick, 147 Ore. 244, 31 P. (2d) 663, prior to pushing plaintiff off a high diving board to the cement pool edge below, a group of children had been playing tag and pushing on the stairway leading to the diving tower and on the tower platform. In Rawson v. Massachusetts Operating Co. Inc. 328 Mass. 558, 105 N. E. (2d) 220, 29 A. L. R. (2d) 907, where one of a group of boys, who had been loud and boisterous for a period of more than an hour, struck plaintiff, a theater patron, when plaintiff cautioned them to be quiet, the court held that since defendant failed to remove or quiet the boys he might have anticipated that a patron might so attempt and that violence could be a possible reaction. In Pfeifer v. Standard Gateway Theater, Inc. 259 Wis. 333, 48 N. W. (2d) 505, an 11-year-old plaintiff while attending a movie was hit in the eye with a paper wad, and evidence existed indicating older boys had been shooting paper wads for some time. The court reversed a directed verdict for the defendant. Lastly, in Lee v. National League Baseball Club, 4 Wis. (2d) 168, 89 N. W. (2d) 811, plaintiff was trampled when a group of spectators rushed near her seat to recover a souvenir foul ball at a baseball game. In affirming a judgment for plaintiff, the Wisconsin court concluded that, based upon past knowledge of the actions of spectators when a foul ball is hit into the stands, the foul ball itself was sufficient notice to anticipate that a patron might suffer injury in the ensuing scramble. The holding of the Lee case is similar to our cases holding that intoxication standing alone is sufficient reason to anticipate injury to another by one whose aggressive urges are stimulated by liquor.[3] We cannot extend the latter doctrine to hold that a group of young men mingling about the entrance to a dancehall is in and of itself reason to anticipate injury to patrons. To do so would impose an affirmative duty upon a proprietor of a public place to dispel any group of young men found together for any purpose. The result would be not only an unrealistic burden upon the proprietor but an unfair appraisal of the motives of any given group of young men.

---

[3]Sylvester v. Northwestern Hospital, 236 Minn. 384, 53 N. W. (2d) 17; Priewe v. Bartz, 249 Minn. 488, 83 N. W. (2d) 116; see, also, Mastad v. Swedish Brethren, 83 Minn. 40, 85 N. W. 913, 53 L. R. A. 803.

Knight v. Powers Dry Goods Co. Inc. 225 Minn. 280, 30 N. W. (2d) 536, cited by neither of the parties, is a case very similar to the one at bar. There two detectives stopped a thief as he left defendant department store with stolen books. He quietly consented to accompany the detectives to the store office. Suddenly, while waiting for the elevator, the thief broke loose and ran, mowing down and injuring plaintiff. In reversing the verdict for plaintiff and ordering judgment for defendant, we relied upon the fact that, prior to his sudden charge, the thief had evidenced no indication of any forthcoming violent action. If the act of catching a thief with stolen goods is in and of itself no indication from which a proprietor could anticipate injury to other patrons, neither is a group of youths gathered about the doorway to a dancehall a fact from which injury to others is reasonably foreseen.[4]

In view of the evidence herein, it cannot be said that defendant had knowledge of any facts from which he could reasonably anticipate injury to a patron.

Order reversed with directions to enter judgment for defendant.

Reversed.

---

[4]See, also, Mullan v. Wisconsin Cent. Co. 46 Minn. 474, 49 N. W. 249.