Shirley **TOWERY**, a minor, by and through her next friend and father, Lloyd G. Towery, Plaintiff in Error,

v.

**J. F. GUFFEY**, Defendant in Error.

No. 38397.

Supreme Court of Oklahoma.

Nov. 22, 1960.

Rehearing Denied Jan. 17, 1961.

Bulla, Melone, Meister & Sheehan, Oklahoma City, for plaintiff in error.

Green & Swidensky, by Clarence P. Green, Oklahoma City, for defendant in error.

PER CURIAM.

Plaintiff brought this action against the defendant for personal injuries she received

while skating as a paid patron at defendant's skating rink when she was struck violently from the rear, knocked to the floor and injured by one or more of a group of boys whom, it is alleged, were carelessly and negligently skating at an excessive rate of speed while holding hands, playing a game called "crack the whip".

Plaintiff alleged that defendant was negligent in: (a) permitting patrons of his place of business to skate at excessive speeds and with a lack of caution and regard for the safety of others; (b) allowing patrons to engage in boisterous games and activities such as "crack the whip", and "tag"; (c) failing to provide supervision and control of the patrons using the skating facilities. Plaintiff asked for damages in the sum of $10,000 for her pain and suffering and temporary and permanent disability.

Defendant filed his answer wherein he admitted that Shirley Towery had suffered an injury in his place of business, but he denied that her injuries were as great as that alleged and denied that they were the result of carelessness or negligence of the defendant. He further alleged that the injuries to Shirley Towery were the result of her own assumption of the normal and ordinary risk of skating on roller skates, namely that of falling down; and that she fell without being pushed, shoved or in any other way touched or interfered with by any other person.

The evidence on behalf of plaintiff disclosed that at the time of the accident in question Shirley Towery was 12 years of age and was a resident of Del City, Oklahoma, living approximately a mile from the Joyland Skating Rink, the place of business of the defendant where the accident occurred. She skated for the first time when she was seven or eight years of age, and had been skating more or less regularly since that time to the date of the accident. She and her friend, Margaret Watts, went to the Joyland Skating Rink to spend the morning skating. This was Shirley's first visit. They arrived at the skating rink at about 9:35 a. m., paid the thirty-five cents admission fee at the door, obtained skates at the skate counter, and began skating. The defendant, J. F. Guffey, was behind the Skate counter, at the time and there were approximately forty boys and girls skating, but no adults; it apparently being the custom to reserve the Saturday morning skating periods for children only.

The skating was divided into periods for different skaters, and for the different types of skating so designated by an electric sign. When the girls began skating, an "all skate" period (that is for boys and girls) was in progress. The two girls skated together around the rink in a counterclockwise direction in conformity with the skating pattern. This period lasted for about 30 minutes, until approximately 10:00 a. m. The skating period then changed to a "girls only" period, and Shirley and Margaret continued skating. That period lasted about five minutes, at which time a "boys only" skating period began. At that point, the girls stopped skating and went to a refreshment counter and bought a coke.

During the period that they had been skating, both girls testified that at no time did they see any adult or any other person on the skating floor or in the skating area supervising the skating activities. Both girls also testified that they did see some boys engaging in rough and fast skating activities. Shirley testified that on at least two occasions during the "all skate" period, she observed "about four or five boys and they were going pretty fast and they would stop and the one at the end would swing around". This is the game I think we all know as "crack the whip". Margaret testified that she did observe some of the boys skating fast and holding hands during all skate period. Neither of the girls had had any difficulty in their personal skating activities up to that point.

After the boys' skating period, an "all skate" period started once again, and Shirley and Margaret again resumed their skating. Shirley recalled the time as approximately 10:15 a. m., when this period began. Again there was no supervision of any kind on or in the area of the skating

floor. Shirley was skating somewhat to the front of Margaret when the accident happened. As she was skating, someone struck her violently from the rear knocking her to the floor and breaking her arm in several places. She did not see who struck her, but she stated after she was struck and as she lay on the floor, she looked up and saw some boys still holding hands and looking back. She stated these were the boys that struck her and these were the ones that were "popping the whip". Margaret came up to her as she was getting up off the floor. Shirley's right arm pained her, and when she looked at it, she saw that it was all swollen and bones were sticking up around the edge. Both girls then skated over to some benches along the side of the skating area. Shirley's crying attracted the lady behind the refreshment counter. This unidentified lady, and the defendant's daughter, who also came up about that time, assisted Shirley in getting her skates off, and they took her to the defendant's office, where she saw the defendant for the first time since the fall. He had apparently been lying down in the office. He asked her what had happened and when she told him a boy knocked her down, he replied, "you don't need to remember that".

At the close of the evidence of the plaintiff the defendant demurred to the evidence and it was overruled "reluctantly". Then the attorney for the defendant stated: "The defendant does not desire to present any evidence". Both sides rested and the defendant renewed his demurrer and moved for a directed verdict. Upon due consideration the trial court instructed a verdict for the defendant.

■ It is the contention of the plaintiff that the trial court erred in so directing a verdict for the defendant. This court has many times stated the rule that in passing upon a motion for directed verdict, the trial court must consider as true all the evidence favorable to the party against whom the motion is directed, together with all inferences that may be reasonably drawn therefrom, and disregard all conflicting evidence favorable to the movant, and the matter should then be left to the jury if there is any competent evidence tending to show a right to recover under any view of the evidence so considered.

Reference is made to the standard of care owed to the plaintiff by the defendant as being that of a high degree of care, and the defendant in error in its brief agrees that such degree of care is as argued by the plaintiff in error, and in support of that degree of care plaintiff cites Tulsa Exposition & Fair Corp. v. Joyner, 208 Okl. 540, 257 P.2d 1077; Standard Theaters Corporation v. Hughes, 185 Okl. 377, 91 P.2d 1058, and Tulsa Entertainment Co. et al. v. Greenlees, 85 Okl. 113, 205 P. 179, 22 A. L.R. 602. However, we are of the opinion that this case is distinguishable from those cases, and that the standard of care was that of ordinary care. But let that be as it may, we deem it unnecessary to pass upon the question of the degree of care owed by the defendant.

The record discloses that there was no dispute that defendant was the proprietor of the skating rink in question; nor is it denied that plaintiff was a paid patron and that she sustained an injury at the rink and required medical attention as a result thereof.

■ We are of the opinion and hold that the question before us is whether or not the evidence was sufficient to show primary negligence or to make a prima facie case. We think there was a showing of primary negligence and that the evidence was sufficient to make a prima facie case. Therefore, the trial court erred in directing a verdict for the defendant.

■ The law does not require every fact and circumstance which make up a case of negligence to be proved by direct and positive evidence or by the testimony of eye witnesses. Proof of the fact of negligence may rest entirely in circumstances; in other words, circumstantial evidence alone may authorize a finding of negligence. Hence, negligence may be inferred from all the facts and attendant circum-

stances in the case, and where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inference from established facts, a prima facie case is made. 38 Am.Jur., Sec. 333, p. 1032.

Reversed for a new trial.

The Court acknowledges the aid of Supernumerary Justice CORN in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the court.

WILLIAMS, V. C. J., and JOHNSON, BLACKBIRD, JACKSON, IRWIN and BERRY, J., concur.

DAVISON, C. J., and HALLEY, J., dissent.