DONALD J. POULIOT & another *vs.* MAURICE BLACK.

Middlesex.     October 6, 1960. — December 7, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Negligence,* Assumption of risk, Golf ball.

An experienced caddy, who had been retrieving golf balls driven from a practice tee of a private golf club for half an hour while the balls "were flying all around" and who had "heard no one say 'fore' to him," voluntarily assumed the risk of injury which he sustained when struck by a ball driven by a member of the club from the practice tee, and could not recover from the member for such injury.

TORT. Writ in the Superior Court dated August 13, 1956. The action was tried before *Pecce,* J.

*Joseph H. Elcock, Jr.,* for the plaintiffs.

*John F. Finnerty,* for the defendant.

WILLIAMS, J. In this action of tort by a minor (hereinafter called the plaintiff) to recover for personal injury from being hit by a golf ball, and by his father for consequential damage, verdicts were ordered for the defendant.

In his answer the defendant pleaded the plaintiff's contributory negligence and his assumption of risk. There was evidence that the plaintiff, a boy of ten years, was injured on June 19, 1954, while "shagging" golf balls on the premises of a private golf club in Weston. Shagging is the process of picking up and returning golf balls which have been driven from a practice tee. The plaintiff had caddied six or eight times and on the day in question had been sent by the golf professional to the driving range to shag balls for the members. He had shagged balls for about half an hour when he was struck in the head by a ball from the practice tee driven by the defendant.

The defendant was a member of the club and had gone to the practice tee with a bucket of balls which he had purchased from the club for fifty cents. He had driven one half of the balls when one of them which had been "sliced" about twenty-five feet to the right of its intended course struck the plaintiff. The latter was one hundred yards in front and somewhat to the right of the tee from which men were driving and was coming up over a rise of ground or hill from a brook where he had salvaged a ball. The defendant did not see him until "just at . . . [the] time the ball struck him" and had not warned him that he, the defendant, was driving. The plaintiffs have excepted to the direction of verdicts for the defendant.

We need not decide whether in the circumstances there was negligence on the part of the defendant or a causal connection between his failure to warn the plaintiff and the plaintiff's injury, since it is plain that there was an assumption by the plaintiff of the risk of being struck by balls driven from the practice tee. The voluntary conduct of a plaintiff in exposing himself to a known and appreciated risk "is the interposition of an act which, as between the parties, makes the defendant's act, in its aspect as negligent, no longer the proximate cause of the injury; or at least is such participation in the defendant's conduct as to preclude the plaintiff from recovering on the ground of the defendant's negligence." *Fitzgerald* v. *Connecticut River*

*Paper Co.* 155 Mass. 155, 159. There was no evidence that the plaintiff was employed by the defendant but, independent of the "relation of master and servant, there may be a voluntary assumption of the risk of a known danger, which will debar one from recovering compensation in case of injury to person or property therefrom." *Miner* v. *Connecticut River R.R.* 153 Mass. 398, 402.

In a discussion of the doctrine of voluntary assumption of risk, in *Hietala* v. *Boston & Albany R.R.* 295 Mass. 186, 190–191, it was said by Judge Lummus that its effect "is to render unnecessary an analysis which might determine whether the ultimate ground of denial of recovery is absence of duty or breach of duty, want of proximate causal relation, or contributory negligence." See *Perry* v. *Loew's Boston Theatres Co.* 291 Mass. 332. While the burden of proving assumption of risk was upon the defendant (*Winchester* v. *Solomon,* 322 Mass. 7, 11), the plaintiff's own evidence demonstrated that he knew the conditions under which he was "shagging" the balls and the danger of being hit by one of the balls. He testified that the balls "were flying all around for half an hour" and "that he heard no one say 'fore' to him while they were driving on the driving range." His experience as a caddy necessarily taught him that golf balls particularly when driven in practice may frequently travel in diverse and unintended directions. There was no error in directing verdicts for the defendant. *Katz* v. *Gow,* 321 Mass. 666, 667. See *Lemoine* v. *Springfield Hockey Assn. Inc.* 307 Mass. 102; *Shaw* v. *Boston Am. League Baseball Co.* 325 Mass. 419.

*Exceptions overruled.*