BRUCE DIKER, A MINOR, BY LOUIS DIKER, HIS FATHER AND NATURAL GUARDIAN, AND ANOTHER v. CITY OF ST. LOUIS PARK.

130 N. W. (2d) 113.

July 17, 1964—No. 38,977.

---

[1]See, Minn. St. 176.481; Larson v. Davidson-Boutell Co. 258 Minn. 64, 102 N. W. (2d) 712.

*Cragg & Barnett,* for appellant.
*Dorfman, Rudquist, Jones & Ramstead,* for respondents.

SHERAN, JUSTICE.

The appeal is from an order of the district court denying defendant's alternative motion for judgment notwithstanding the verdict or a new trial.

On February 6, 1959, Bruce Diker, then 10 years of age, sustained serious personal injury when hit near the eye by a puck while playing

hockey at a public skating rink maintained by defendant. A verdict of $17,000 was returned in his favor and his father, Louis Diker, was awarded $2,000 for medical and hospital expenses made necessary by the accident. Reversal is urged on the following grounds:

(1) That the notice of claim required by Minn. St. 465.09 was not filed within 30 days as specified by statute.

(2) That the maintenance of the skating rink here involved by the city of St. Louis Park was a governmental function and that this defense was not waived by defendant.

(3) That the evidence fails to support a finding of negligence on the part of the city proximately causing damage to plaintiffs.

(4) That contributory negligence or assumption of risk on the part of Bruce Diker appears from the evidence as a matter of law.

(5) That the trial court erred in refusing to submit the issue of contributory negligence on the part of Louis Diker, the father, to the jury.

■ A person claiming damage from any city upon the grounds of negligence is required by Minn. St. 465.09 to "cause to be presented to the common council or other governing body within 30 days after the alleged loss or injury, a written notice." This accident occurred on February 6, 1959. The statutory notice was filed 31 days later, on March 9. The preceding day was Sunday, March 8.

Minn. St. 645.15 provides that where the performance of any act is directed, and the period of time for the doing thereof is prescribed by law, the last day shall be omitted from the computation if it falls on Sunday. Rule 6.01 of Rules of Civil Procedure also provides that where the last day of a prescribed period falls on a Sunday the period runs until the end of the next day. It is unnecessary for us to determine whether our Rule 6.01 should be given the same construction accorded the comparable Federal rule in Joint Council, etc. v. Delaware, L. & W. R. Co. (2 Cir.) 157 F. (2d) 417, where it was held that Rule 6a of Federal Rules of Civil Procedure does not apply until an action is first commenced. While in Minnesota the Rules of Civil Procedure supersede statutes which are "inconsistent or in conflict," Rule 81.01(3),

464

there is no inconsistency or conflict between § 645.15 and Rule 6.01 in so far as computation of time in this particular case is concerned.[1]

■ It is conceded that the purchase of liability insurance by the city brings this case within the scope of Minn. St. 1961, § 465.62, which applied in 1959 before it was repealed by L. 1963, c. 798, § 6. That statute required the insurer for liability, arising from a city's governmental function, to waive the defense of governmental immunity "unless the city * * * consents to the assertion of that defense." In 1958 the members of the council of defendant city discussed the matter with its attorney and instructed him informally *without motion or vote* to authorize assertion of the defense in all cases except those deserving special consideration. Such special cases were, in the discretion of the city attorney, to be referred to the city council for decision. He so informed the insurer. When the instant case was filed, the council referred it to the city attorney for advice and recommendation. It took no further action until after the trial. The defense was in fact asserted by the attorneys designated to defend by the insurer acting on instructions received from the city attorney.

The charter of defendant city places its discretionary power in the council. By the terms of the charter, the council is required to act by ordinance, resolution, or motion, with a recorded vote. No such formal action was ever taken prior to trial specifically directing the assertion of the defense of governmental immunity in this case. Under these circumstances, we agree with the trial court that the required consent to the assertion of the defense of governmental immunity was not established.

The complaint was served in February 1960. The action was tried and verdict returned in April 1962. On August 23, 1962, the council formally ratified the action of the city attorney in permitting the assertion of the governmental immunity defense. But this was too late. The

[1]As to the rule generally, see 52 Am. Jur., Time, §§ 18, 21; 42 Am. Jur., Process, § 27; 50 Am. Jur., Sundays and Holidays, § 81. The object of the requirement of a 30-day notice is not subverted by the construction we have given the statute and the rule. See, Russell v. City of Minneapolis, 259 Minn. 355, 107 N. W. (2d) 711; Nicol v. City of St. Paul, 80 Minn. 415, 83 N. W. 375.

litigation based on lack of the defense had already been submitted to the jury. The attempted ratification of the city council did not constitute newly discovered evidence. It was an attempt by the defendant city to take action, with the formality required by its charter, which should have been taken before the trial was commenced if it was to be of any effect.

■ The evidence offered at trial does not sustain a finding of negligence. Over objection by defendant, the trial court gave the following instructions particularly relevant to this issue:

"A municipality such as the defendant under the circumstances of this case, operating a skating rink or other recreational facilities maintained by it, is required to exercise reasonable care for the safety and protection of children and others who are invited expressly or impliedly to use such facilities. This includes reasonable supervision and the furnishing of equipment that is reasonably safe, where equipment is supplied as part of the city's activities.

\* \* \* \* \*

"\* \* \* The defendant was under no duty to warn the plaintiff of dangers which were known to the plaintiff or which he should have known in the exercise of reasonable care, and you may not find that the defendant was negligent merely because its employee allowed plaintiff, Bruce Diker, to engage in the game of hockey on the city rink."

The rule is well established in Minnesota that a *private* person operating a place of public amusement is under an affirmative duty to make it reasonably safe for his patrons,[2] and that the obligation of due care includes supervision and control of others on the premises whose actions may cause injury,[3] at least where the defendant has actual or constructive knowledge of the activities involved.[4]

---

[2]See, Danielson v. Reeves, 211 Minn. 491, 1 N. W. (2d) 597; Ackerman v. Motor Sales & Service Co. 217 Minn. 309, 14 N. W. (2d) 345; Lindgren v. Voge, 260 Minn. 262, 109 N. W. (2d) 754, 88 A. L. R. (2d) 1080.

[3]See, Johnson v. Amphitheatre Corp. 206 Minn. 282, 288 N. W. 386 (roller skating rink); Christianson v. Hager, 242 Minn. 41, 64 N. W. (2d) 35 (baseball park).

[4]Generally speaking, one who participates in a game assumes the in-

A number of cases from other jurisdictions have been noted which apply these general principles to skating rinks.[5]

In Minnesota the municipal operation of a recreational area open to the public without charge has been held to be a *governmental* function. Nissen v. Redelack, 246 Minn. 83, 74 N. W. (2d) 300, 55 A. L. R. (2d) 1428. In Howard v. Village of Chisholm, 191 Minn. 245, 253 N. W. 766, the plaintiff was injured while playing hockey as a result of being struck by spectators who were catapulted from a balcony to the ice below by a surging crowd. Although the defense of *governmental* immunity was available in 1934 when that case was decided, the village did not assert it because of an inhibiting provision that appeared in its policy of liability insurance. Counsel for the parties tried the case on the theory that the village should be held liable if the evidence justified recovery against a private person owning and using the building. It was held that the claimed negligence of the village was a jury question but, as noted, the law of the case was adopted by mutual agreement of the parties.

There is a difference between that relationship which exists between a municipal corporation and a person making use of a park or playground provided without charge on the one hand, and that which exists between the owner of a private enterprise conducted for profit and its patrons on the other. The person who pays for admission has

herent risks of the contest. See, Ruehling v. American Legion Pavilion, Inc. 255 Minn. 391, 96 N. W. (2d) 702.

[5]See, Towery v. Guffey (Okla.) 358 P. (2d) 812, where a 12-year-old plaintiff was injured by a group of boys playing "crack the whip"; Crammer v. Willston Operating Co. 19 N. J. Super. 489, 88 A. (2d) 630, where reckless roller skaters injured the plaintiff; Reay v. Reorganization Inv. Co. (Mo. App.) 224 S. W. (2d) 580, where it was held that an operator of a skating rink could not be found liable for injury to a patron struck by another skater in the absence of evidence showing that the defendant knew or should have known of this reckless conduct. Note, also, Rauch v. Penn. Sports & Enterprises, Inc. 367 Pa. 632, 81 A. (2d) 548, where it was held with three justices dissenting that an *adult* patron of a skating rink assumed the risk of injury caused when bumped by an unruly and youthful skater whom she had observed shortly before the accident and about whom she had then complained.

more reason to expect that supervision will be maintained and adequate equipment provided as partial consideration for the admission charged. Proprietors can adjust such charges to spread the cost of protection among those benefited by it. A municipality, in contrast, provides recreational facilities to people generally, and if no admission charge is made, the cost of measures to prevent possible injury must be carried by the public in the form of taxes. If the identical precautions are required in this situation as are to be expected from a private owner operating for profit, the result may be that public funds will be spent for protection from remote hazards easily avoided by the users which could be spent with greater overall benefit to make healthful recreation more widely available. The general requirement is the same in the one case as in the other; that is, due care under the circumstances. But the fact that the responsible authorities in allocating available public funds must balance the need for extending and maintaining recreational facilities against the need of guarding against foreseeable dangers to those using certain of them is a circumstance which must be considered in determining the acts or omissions which do or do not meet the prescribed standard. Therefore, a precedent which controls in testing facts by the standard of care owed to a business invitee, while helpful, is not necessarily controlling.

It is our opinion that a municipality making a skating rink available to the general public without charge has no duty to provide supervision of those participating in the games being played on the ice and no duty to provide equipment for such games. If it assumes such a duty, however, it must apply reasonable care to perform it adequately. Fjellman v. Weller, 213 Minn. 457, 7 N. W. (2d) 521; Prosser, Torts, § 38, p. 185. There is no evidence that defendant assumed supervision over persons skating and playing on the ice at the time and place in question. The supervision which had been afforded was limited to that provided by referees and voluntary coaches while games were in actual progress. A "warming house attendant" was stationed at the rink, but his responsibility was the supervision of activities occurring in the warming house. The city had not assumed the responsibility of supervising "practice sessions" such as the one in which Bruce

Diker was participating when hurt, and in our judgment a finding of negligence cannot be based on its failure to do so.

But, the city did assume the duty of furnishing equipment to the boys who played hockey at the rink. Face masks were not provided. If at the time of the accident (February 6, 1959) masks were available which could have prevented the occurrence of this injury, the jury could have found that the failure on the part of the city to include a face mask in the equipment provided by it constituted negligence proximately causing the injury sustained by Bruce Diker.

Mr. LeRoy Theis, employed by the defendant as warming house attendant, was on duty the evening of the accident. He had some acquaintance with Bruce Diker, having observed him at the community center on a number of occasions. He was charged with knowledge that Bruce was immature and probably not skilled as a hockey player. Mr. Theis knew that Bruce intended to play goalie with the other boys on the ice, ranging in age from 10 to 18 years, and of the hazards involved. He testified, "I told him that I wouldn't advise him to go out into the goal, to act as a goal tender, because *he was not a regular goal tender*; and he told me—well, I can't repeat the words, but he just told me to give it [the goal tender's equipment] to him, *so I gave it to him.*" And again, "I advise all boys that are not regular goalies not to go in the goal. *They have no business in there.*" He gave such advice, he said, because he knew *"that it is a dangerous thing to do."* (Italics supplied.) Nevertheless, he gave him the equipment then on hand, including a chest protector, shin guards, and gloves. Following this occurrence, a face mask was added to the equipment made available by the city, but we cannot tell from the record whether a protective mask adequate to prevent injury of the type here involved was reasonably obtainable by the city at the time of the accident. The burden of presenting this evidence was on the plaintiffs. The record indicates the possibility that facts relevant to this question could be produced in the event of a new trial. It is our conclusion, therefore, that the matter should be retried and plaintiffs permitted to show, if they can, that the defendant city was negligent in the performance of its assumed duty of providing equipment to those using its skating rink for the purpose

of playing hockey and that this failure, if there was one, was a proximate cause of the harm.

■ Generally speaking, one who participates in a game assumes the inherent risks of the contest.[6] If plaintiff is to be held to the same standard of care of risk comprehension as an adult, it is clear that a verdict should have been directed for the defendant. In Minnesota the hazard of being struck by a flying puck is held to be of the same nature as the danger of being hit by a baseball in so far as spectators at games are concerned. In the words of Mr. Justice Olson in Modec v. City of Eveleth, 224 Minn. 556, 560, 29 N. W. (2d) 453, 455:

"* * * Since the puck is round with a flat bottom and top, it is not always possible for a particular player to determine the direction the puck will take when in flight, nor how high it will rise. Any person of ordinary intelligence cannot watch a game of hockey for any length of time without realizing the risks involved to players and spectators alike."

In that decision the dangers from a flying puck are analogized to the dangers of being hit by a baseball. The court said (224 Minn. 563, 29 N. W. [2d] 456):

"* * * Hockey is played to such an extent in this region and its risks are so well known to the general public that as to the question before us there is no difference in fact between the two games so far as liability for flying baseballs and pucks is involved."

We are dealing here, however, with a boy only 10 years of age. In Heitman v. City of Lake City, 225 Minn. 117, 123, 30 N. W. (2d) 18, 23, where the plaintiff's decedent in a wrongful death action was drowned at the age of 7 after falling into the boat harbor at Lake City, decision turned in part on this observation:

"* * * Children, through childish inattention, may fail to observe conditions which an adult might reasonably be expected to discover. Even if they know of the condition, there may be risks which it is not reasonable to assume that children will appreciate."

---

[6]See, Annotation, 7 A. L. R. (2d) 704.

The close line of demarcation which separates contributory negligence or assumption of risk as a matter of law from an evidentiary situation which is for determination by the jury is illustrated by two recent cases from the State of Massachusetts. In Pouliot v. Black, 341 Mass. 531, 170 N. E. (2d) 709, it was held as a matter of law that a 10-year-old plaintiff hit by a golf ball while "shagging" on a driving range was contributorily negligent in light of his testimony indicating that he knew the danger of being hit. On the other hand, in Farinelli v. Laventure, 342 Mass. 157, 160, 172 N. E. (2d) 825, 827, a 10-year-old plaintiff at a roller skating rink was held not to be contributorily negligent as a matter of law when knocked down by other skaters whom she had previously observed "doing the whip." The court there said that under the circumstances of that case the "plaintiff's conduct must be judged in the light of her 'immaturity * * * [and] the lack of the caution and judgment natural to youth.' "

In Aldes v. St. Paul Ball Club, Inc. 251 Minn. 440, 88 N. W. (2d) 94, the plaintiff, a 12-year-old, was struck by a flying baseball at the St. Paul baseball park. The minor had been induced to leave the seat assigned to him and sit in a box seat by an employee of the defendant. The court, after noting that plaintiff was well acquainted with the dangers inherent in open seats and "aware that misdirected balls generally land in the box seats," said (251 Minn. 443, 88 N. W. [2d] 97):

"* * * While it is evident from his own testimony that plaintiff could have appreciated the greater dangers involved in occupying a box seat if he had paused to consider them at the time Lilly suggested he move, it is not clear that he did so, and we see no reason for holding him to the same standard of sober reflection which we would require of an adult. *The workings of the mind of a boy of his age are not susceptible of ironclad rules.* For this reason the law imposes upon him the duty to act only with the degree of care commensurate with his age, experience, and judgment." (Italics supplied.)

Again in TePoel v. Larson, 236 Minn. 482, 484, 53 N. W. (2d) 468, 469, where the contributory negligence of a minor was being reviewed, the court noted:

"* * * While Russell [the plaintiff] was a boy of at least average intelligence, he only was 9½ years old. He is chargeable only with that degree of care commensurate with his age and intelligence."

From the testimony of the injured plaintiff it appears that the reason he was hit by the flying puck was that he "froze" and was unable to duck to evade it. The shot traveled the distance of 40 feet. If he had not "frozen," it is probable that he would have been able to avoid being hit. There is nothing in the testimony to indicate that he had experienced such difficulty before and nothing to indicate that he had been hit in the face or head on any prior occasion. To a person of mature judgment the possibility or even the probability that an unskilled "goalie" with limited skating ability would "freeze" in the path of a flying puck would seem to be readily anticipated. However, with respect to a plaintiff not yet 11, we feel that the jury could find as it did, apparently, that because of his youth he should not be precluded from recovery as a matter of law.

■ Finally, the defendant assigned as error the refusal of the trial court to let the jury consider the defense of contributory negligence on the part of the father of the injured boy. Such a defense if established would bar recovery of medical expense caused by the accident. The evidence in the record indicates that the father permitted the boy to play hockey at the community rink and provided him with some hockey playing equipment. There is no evidence that he knew that he was playing in a particularly dangerous position as goalie. There is no evidence to indicate that he knew that the equipment provided was inadequate to protect the boy against being hit in the face by a flying puck when stationed in the nets for the purpose of obstructing the flight of these missiles. In the absence of such knowledge there was a failure on the part of the defendant to maintain its burden of proving contributory negligence on the part of the father as a matter of law.

Because the case is an unusual one and the evidence respecting assumption of risk and contributory negligence may be amplified, retrial of all issues is indicated.

Reversed and new trial granted.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that the issues of defendant's negligence and of the contributory negligence or assumption of risk on the part of Bruce Diker were properly submitted to the jury and that the order appealed from should be affirmed

MURPHY, JUSTICE (dissenting).

I join in the dissent of Mr. Justice Thomas Gallagher.