## CHARLES F. SMITH, A MINOR, BY HIS FATHER AND NATURAL GUARDIAN, WILLIAM A. SMITH, JR., AND ANOTHER v. VILLAGE OF PINE RIVER.

232 N. W. 2d 241.

August 8, 1975—No. 44539.

*Kelly & Finley, R. Donald Kelly,* and *Gordon I. Sinclair,* for appellants.

*Carroll, Cronan, Roth & Austin* and *Robert M. Austin,* for respondent.

Heard before Knutson, C. J. (Ret.), and Otis, and MacLaughlin, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

The plaintiffs, Charles F. Smith, a minor, and his father, William A. Smith, Jr., seek to recover damages against the village of Pine River for injuries sustained by Charles arising out of his use of a municipal bathing beach maintained by the defendant. The court tried the case without a jury and found for the defendant. The plaintiffs appeal from an order denying their motion for amended findings or a new trial. We affirm.

The facts are not in dispute. The village of Pine River has, since 1937, maintained a municipal bathing beach which includes a diving tower, a picture of which is attached as an appendix. On July 31, 1967, Charles, who was then 14, and his sister, who was then 8, were taken to the beach by their grandmother to swim. At about 4 o'clock in the afternoon, while Charles was leaning over the edge of the elevated diving platform talking to his sister who was in the water, another child pushed him from behind. His left hand was on the left rail, and as he was propelled forward face down, he grasped the railing long enough to swing backward and dropped some 8 feet to the cement base on which

the platform stood. He sustained very severe and disabling permanent injuries.

In essence, plaintiffs claim defendant was negligent in the following respects:

(1) The village did not provide safe equipment because the platform of the diving tower did not extend at least 3 feet out over the water.

(2) The village failed to post rules governing bathers' conduct or rules governing the duties of the lifeguard, who was then on duty.

(3) The village failed to provide any matting or other abrasive material to prevent bathers from slipping on the wet platform.

(4) The lifeguard failed to supervise the children adequately so as to prevent roughhousing, pushing, "cannonballing," and other horseplay.

(5) The lifeguard should have permitted only one person at a time on the platform.

(6) The village should have provided an assistant to relieve the lifeguard at intervals during the day.

(7) The lifeguard was not furnished an elevated platform of her own from which she could better observe the activities of the children.

Plaintiffs supported their claim by the testimony of an expert in physical education, who stated that the platform should have extended out 3 feet and was unstable, that the platform was too smooth and not properly drained, and that an elevated lifeguard stand should have been provided to permit the lifeguard to better supervise the children. A professional engineer testified to the same general effect and submitted a drawing to show how the structure could have been made safe.

The trial court found that defendant was not negligent and did not fail either to furnish a reasonably safe diving tower or to provide adequate supervision. The court further found that Charles assumed the risk of injury. Judgment of dismissal with

prejudice was ordered. We hold that the findings of the court are not clearly erroneous and are supported by the evidence. Attached to and made a part of the findings is a memorandum in which the court carefully articulated the reasons for its decision. We adopt as our own the court's views as follows:

"* * * In the present case, I cannot view the diving tower as it stood on July 31, 1967 as being inherently dangerous in either condition or design. Plaintiffs argue that the diving edge of the platform should extend out over the surface of the water a distance of at least three feet and that defendant's failure to so provide constitutes negligence. It is possible that such a modification of the existing tower would have prevented the serious injuries sustained by plaintiff Charles Smith (hereafter referred to simply as plaintiff) under the particular circumstances of his fall. But this is not to say that due care on the part of the municipality requires that it anticipate all possible combinations of circumstances which may lead to injury and take appropriate steps to prevent the same. In this regard, it should be noted that only a combination of circumstances operated to cause plaintiff's injuries, namely, that he was pushed by one of the girls on the platform with him and that when propelled towards the water he grasped either the railing or one of its vertical supports so as to cause his body to swing around the front end of the left railing and back along the left side of the tower. While a municipality operating a bathing beach may reasonably anticipate that there will be some pushing and other forms of horseplay in the use of its equipment by teen-agers and the duty of exercising due care may, and in this case did, include the responsibility of using reasonable care to provide supervision so as to minimize the possibility of injury to the users of such equipment, it seems to me to be wholly unrealistic to require of an operator that it anticipate all possible consequences of the use and misuse of such equipment and take appropriate steps to prevent the same. Accordingly, I have given little weight to the testimony of an engineer who, with the benefit of hindsight and knowledge of the

circumstances of the accident, is able to suggest modifications in defendant's diving platform which would have prevented this particular accident.

"On the basis of the evidence in this case, I find that defendant acted with reasonable or due care in providing the diving tower at its bathing beach. The municipality provided a structure of sufficient stability to permit its safe use; adequately maintained it over the years; and the same was reasonably designed to safely serve its intended purpose. Use of the diving platform in the usual and customary manner posed no threat of injury to even youthful users. * * *

"In determining the question of whether or not defendant was negligent in furnishing an unsafe diving tower, I have considered as relevant on that issue the fact that during 35 years of use, the plaintiff's injury is the only one involving use of the diving tower of which the defendant municipality was aware. * * * While I do not consider this fact in any sense controlling on the issue of defendant's negligence, it does tend to confirm my view that defendant was not negligent in furnishing an unsafe diving tower. Dun. Dig, Sec. 7053a and cases cited under footnote 2; McCormick, Evidence, Sec. 167.

"* * * [M]y finding on this issue of the adequacy of supervision is premised upon the proposition that while there were occasional instances of pushing, this type of activity was not so frequent as to compel observance and action by a competent supervisor.

"* * * To charge a lifeguard or other supervisor with the responsibility for seeing all incidents involving horseplay by 40 to 50 children of varying ages at even a small beach, and to hold her negligent for failure so to do, goes far beyond my concept of reasonable or due care. To so hold would make the municipality an insurer of all children injured during the course of youthful horse-play or arising out of misuse of equipment furnished for their enjoyment. This is not the law in this state

as enunciated in the Diker case [Diker v. City of St. Louis Park, 268 Minn. 461, 130 N. W. 2d 113 (1968)].

"Plaintiffs' counsel in his brief argues that the failure of defendant to prohibit more than one bather on the diving platform at one time, either by posted rule or by action of the beach supervisor, would constitute negligence. I cannot accept that proposition. Having in mind the dimensions of the platform, the fact of side rails and the fact that two sets of steps were provided for use by bathers, it is apparent that the tower was designed to accommodate more than one person at a time on the platform. Both Miss York and her successor, who was also a trained and experienced lifeguard, so viewed the diving tower but did limit its use to 3 or 4 persons at a time. It is true that both lifeguards sought to enforce a rule against more than one person diving at a time. But there is no evidence that the latter rule was violated on July 31, 1967 or any other day."

We are in accord with the reasoning of the trial court and affirm.

Affirmed.