Gina STUCCI, a minor, By and
Through Patrick T. TIERNEY
as Guardian Ad Litem, Respondent,

v.

CITY OF SAINT PAUL, Defendant and
Third Party Plaintiff, Appellant,

Gary Stucci, et al., Third Party
Defendants, Respondents.

No. C5–86–1304.

Court of Appeals of Minnesota.

April 14, 1987.

Review Denied May 28, 1987.

Thomas J. Germscheid, Collins, Buckley, Sauntry & Haugh, Patrick T. Tierney, St. Paul, for respondent.

Edward P. Starr, City Atty., Walter A. Bowser, Asst. City Atty., St. Paul, for City of Saint Paul.

Peter A. Bologna, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for Gary Stucci.

Heard, considered and decided by SEDGWICK, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

SEDGWICK, Judge.

Gina Stucci sued the City of Saint Paul in negligence for injuries she sustained in a skating accident on a municipal rink. The jury awarded her $20,000 in compensatory damages, finding the City to be 80% negligent and her parents 20% negligent. The City appeals from the judgment and denial of its motion for judgment notwithstanding the verdict or a new trial. We reverse.

## FACTS

Gina, age 12, severely cut her hand Sunday, December 26, 1982, shortly before 7:00 p.m., in a skating accident at the Sylvan playground. The rinks were closed that Sunday evening, as they had been since December 23rd. Due to financial difficulties, Saint Paul cut weekend skating at recreation centers from the 1983 budget. No outdoor signs were posted at Sylvan to warn people the rinks were closed and three of the playground's six entry points were open. Gina's parents were unaware of the new skating hours and testified the rink appeared open on the 26th although no lights were on, there were no other skaters, and the recreation building was closed. Prior to coming to Sylvan, Gina's father had stopped at two other playgrounds, but there was no ice.

When they arrived at Sylvan, Gina's father inspected the rinks by the light of adjacent street arc lamps, and believed the ice adequate for skating. Gina first skated on the hockey rink, but climbed over the fence to try smoother looking ice in the playground's northwest corner. That ice had not been inspected by Gina's father and was not maintained by playground personnel. While attempting "figure 8's," Gina fell forward and landed on her hands. Her hands went through the ice into a puddle of water. A sharp object slashed through her glove and cut Gina's left palm, causing extensive damage. Several hours after the accident Gina's father discovered a 2–inch piece of jagged glass frozen in an upright position. He chipped the glass out with a skate blade.

## ISSUES

1. Is the City of Saint Paul exempt from liability under the limited municipal immunity granted by Minn.Stat. § 466.03?

2. Was the City negligent in not warning the public of its decision to close the park or in failing to inspect and maintain the skating area when the rinks were closed?

## ANALYSIS

The decision to close the rinks and not provide personnel to inspect the ice, even though the ice was still accessible to skaters, was a discretionary policy decision not susceptible to judicial review.

Minn.Stat. § 466.02 (1982) provides that a municipality is liable for torts stemming from a governmental or proprietary function. However, Minn.Stat. § 466.03 (1982) lists exceptions to this policy.

466.03 *Exceptions*

\* \* \* \* \* \*

Subd. 6. *Discretionary acts.* Any claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

■ Discretionary governmental policy decisions are not subject to judicial review. *Bjorkquist v. City of Robbinsdale,* 352 N.W.2d 817, 818 (Minn.Ct.App.1984).

Decisions made on the executive, planning level of government are discretionary acts. \* \* \* A planning decision is one that involves the balancing of complex and competing factors comprising a discretionary choice between alternatives.

*Gonzales v. Hollins,* 386 N.W.2d 842, 845 (Minn.Ct.App.1986) (citations omitted).

■ Governmental acts are either discretionary, requiring a balancing of competing factors at the planning, policy level, or ministerial (operational), meaning an "absolute, certain and imperative [act], involving merely the execution of a specific duty arising from fixed designated facts." *Ostendorf v. Kenyon,* 347 N.W.2d 834, 837 (Minn.Ct.App.1984) (quoting *Cook v. Trovatten,* 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)).

■ The City of Saint Paul experienced budgetary problems in 1982 which required curtailing some programs and activities. Such decisions are rooted in planning and policy. While elimination of weekend skating may be a minor decision, it is a discretionary policy decision.

A governmental entity's exercise of discretionary acts at a basic policy level

is immune from suit, whereas the exercise of discretionary acts at an operational level is not. * * * The purpose of such an exception is to preserve the integrity of our system of government by ensuring that each coordinate branch of our government may freely make basic policy decisions.

To fall within this exception, however, the discretionary act must not only *involve* a basic policy determination, but must also be the product of a *considered* policy decision.

*Chambers-Castanes v. King County*, 100 Wash.2d 275, 669 P.2d 451, 456 (1983) (citation omitted; emphasis in original). The City's exercise of discretion to close the rinks and the absence of supervision and inspection over the holiday weekend cannot be reviewed by this court, and is an exception to statutory tort liability.

■ Respondent argues that even if the City is immune from suit because it had no duty to provide supervision when the rinks were closed, it is still liable for negligence for failure to inspect and maintain, as well as for failure to warn respondent of dangerous conditions.

Appellant alleges the evidence was insufficient to find the City negligent.

The law is well settled in this jurisdiction that in examining a verdict on appeal the evidence must be considered in the light most favorable to the prevailing party and the verdict must be sustained if it is possible to do so on any reasonable theory of evidence. The verdict should not be disturbed unless it is manifestly and palpably contrary to the evidence.

*Carpenter v. Mattison*, 300 Minn. 273, 276, 219 N.W.2d 625, 628–29 (1974).

In *Diker v. City of Saint Louis Park*, 268 Minn. 461, 130 N.W.2d 113 (1964), the supreme court addressed the extent to which a municipality must supervise activities at its recreational facilities. There, a 10 year old child was injured by a flying hockey puck while playing goalie in an unsupervised practice game. The trial court instructed the jury that a municipality is required to provide "reasonable supervision" of its recreational facilities. *Id.* at 445, 130 N.W.2d at 116. On appeal from a

verdict for plaintiff, the Minnesota Supreme Court reversed and held that although a municipality must exercise "due care under the circumstances," this standard does not require supervision of those skating and playing games on skating rinks which it makes available to the public without charge. *Id.* at 467, 130 N.W.2d at 117. If it assumes such a duty, however, it must apply reasonable care to perform it adequately. *Id.*

Respondent maintains *Diker* is not applicable because it only addressed failure to supervise while the present case is based on failure to maintain and negligent failure to warn.

The City of Saint Paul provided regular maintenance and inspection of the grounds when the rink was open. It provided a playground director, an assistant, and, two days a week, a groundskeeper. The ice was scraped and the grounds inspected every day personnel were present. The rinks were flooded when conditions permitted.

The ice in the low-lying northwest corner was formed by runoff from the hockey rink and from melting snow and rain caused by unusually warm temperatures the preceding week. Although playground personnel did not consider the northwest ice a skating area, it was adjacent to the hockey rink and received no special designation as "unsafe" or "off-limits." When the rink was open, park employees chased children away from this corner. The ice in this area was never scraped and prepared, as the rink ice was, but playground workers examined the area for debris.

On this Sunday evening, because of unusual weather, with highs in the upper 30's and rain followed by nighttime freezing, the ice conditions deteriorated rapidly. In fact, there was no ice at all in the first two parks the Stuccis visited. The City had no knowledge of ice conditions when the rinks were closed.

In addition, the City did inform the public, through the media, that the rink was closed. They did not place hand lettered warning signs because those had been torn or blown down in the past. They did not place orange cones on the ice because those had been previously stolen.

*Diker* pointed out that skating rinks operated without charge to the public are not subjected to as rigorous a duty of care as a privately operated, for profit, facility.

> The general requirement is the same in the one case as in the other; that is due care under the circumstances. But the fact that the responsible authorities in allocating available public funds must balance the need for extending and maintaining recreational facilities against the need of guarding against foreseeable dangers to those using certain of them is a circumstance which must be considered in determining the acts or omissions which do or do not meet the prescribed standard.

*Id.*

Since the City exercised its discretion to close the rinks on weekends because of lack of money, it had no duty to provide maintenance or inspection when it was closed.

The City cannot be expected to indemnify an injured child under these facts. Even though the park was open and provided easy access to the rinks, the lack of lighting, general weather conditions, absence of other skaters and the closed recreation building provided notice that the rinks were closed. The City exercised reasonable care and did not breach its duty to Gina Stucci.

## DECISION

The City's decision to close the rinks on the weekends and to not provide supervision of the rinks during such period was a discretionary act, protected by governmental immunity.

The City exercised reasonable care in its inspection and maintenance of the rinks and did not breach a duty to warn a skater of any dangerous condition, since the rinks were officially closed and the lights turned off and the City had no prior information that there was glass in the ice.

Reversed.