ETHEL LEVY, Plaintiff, v. SAMUEL E. JACOBS, Doing Business as 181ST STREET ICE PALACE, Defendant.

City Court of New York, Bronx County, March 20, 1928.

Negligence — injuries to person — action for injuries suffered when plaintiff was thrown to ice in defendant's skating rink after colliding with another patron — patron's skates were not equipped with toe guards, as required by defendant's regulations and custom of indoor rinks — defendant might reasonably have anticipated accident — verdict for $700 not against weight of evidence.

A verdict of $700 in plaintiff's favor is not excessive and will not be set aside, in an action for damages for injuries suffered when she was thrown to the ice in defendant's indoor skating rink after coming in contact with another patron in the rink, in view of the nature and extent of her injuries, her loss of earnings and expenditure for medical attention, and where it appears that the skates which the other patron was using were not equipped with toe guards as required by defendant's regulations and the general custom in vogue in all indoor rinks.

While the defendant was not bound to insure the safety of his patrons, it was his duty to exercise that degree of vigilance for their protection which was made necessary by his knowledge of the danger, and it was an active obligation on his part to guard against what the evidence shows might reasonably have been anticipated, particularly where he claimed that he published signs prohibiting the use of skates without toe guards and that he instructed his attendants to enforce the rule by excluding from the ice any patron who failed to comply with it.

ACTION to recover damages for injuries sustained by plaintiff while skating in defendant's indoor ice rink.

*Hilda Cohen Lillienthal* [*Abraham Lillienthal* of counsel], for the plaintiff.

*E. C. Sherwood* [*R. J. Scully* of counsel], for the defendant.

DONNELLY, J.   At the time of the accident the plaintiff, who had been admitted to the rink after payment of the admission fee, was using what are known as tubular racing skates equipped with toe guards, when one of the same kind of skates, not equipped with toe guards, and worn by a male patron of the rink, came in contact with plaintiff's skate, throwing her to the ice and causing the injuries for which the jury gave her a verdict of $700, which, in view of the evidence of the nature and extent of plaintiff's injuries, her loss of earnings and expenditures for medical attention, is not

excessive. Upon the rendition of the verdict, the defendant renewed his motion made at the close of plaintiff's case and when both sides rested, and decision upon which was reserved, to dismiss the complaint.

The tubular skate differs from an ordinary skate in that the bottom part of the skate, the blade, extends beyond the shoe, with no triangular protection. Plaintiff claims there is danger in this extension, unprotected, in that it may hook in the skate of another skater. To eliminate this risk, a toe guard, which is a piece of metal extending from the top of the shoe to the end of the skate, and forming the triangular protection, has been in use for upwards of fifteen years. Plaintiff gave evidence there was a custom or rule in ice skating rinks prohibiting the use of racing skates unequipped with toe guards, and the defendant's manager testified that the rule regarding the use of the toe guards " is in vogue in all indoor rinks in this city."

Defendant's manager testified that there were signs posted about the rink prohibiting the use of racing skates unequipped with toe guards. The defendant contends there was no evidence of a common usage or custom respecting the use of toe guards, and that, in the absence of such evidence, he cannot be held liable for his failure to enforce such rule. His manager's testimony seems to be directly to the contrary. Furthermore, the defendant attempted to show that he did the best he could to enforce the regulation, which he himself conceded he had adopted, regarding the use of the toe guards. His son and manager, and one or more of the defendant's witnesses, testified that defendant's " instructors " were directed to put any one off the ice who was using a tubular skate without a toe guard, if they happened to see him, and that, on frequent occasions, these directions were carried out.

Claiming that he published signs about his rink prohibiting the use of racing skates without toe guards, and also that he had instructed his attendants to enforce the rule by excluding from the ice any patron who failed to comply with it — both of which circumstances, it seems to me, remove from the case the question of whether or not the defendant knew the use of racing skates unequipped with toe guards was dangerous — the jury were entitled to find that the defendant knew his patrons might be subject to injury unless such precautions as the situation thus required were taken to protect them. While it is of course true that the defendant was not bound to insure the safety of his patrons, it is nevertheless certain it was his duty to exercise that degree of vigilance for their protection which was made necessary by his knowledge of danger. This duty was not merely passive. It was an active

obligation to guard against the very risk his own evidence shows might reasonably have been anticipated.

Plaintiff and her witnesses testified there were no signs in the rink warning against the use of tubular skates unequipped with toe guards, and that no attempt was made by defendant to observe the skates worn by his patrons and prevent skating on tubular skates unequipped with toe guards. The conflict between the parties on these subjects was left to the jury, who found against the defendant. The defendant also contended that the accident happened, not by an impact between a skate worn by plaintiff and the one used by another patron, but by a collision between the bodies of the two which precipitated the plaintiff to the ice, thus causing her injuries. But that issue was likewise left to the jury, who have disposed of it by their verdict.

The motions to set aside the verdict and to dismiss the complaint are denied, with exceptions to the defendant. Ten days' stay of execution and thirty days to make and serve a case allowed.