CLARA JOHNSON v. AMPHITHEATRE CORPORATION.[1]

November 17, 1939.

No. 32,157.

[1]Reported in 288 N. W. 386.

*Gillette, Nye, Harries & Montague* and *W. O. Bissonett,* for appellant.

*Jenswold & Dahle,* for respondent.

HOLT, JUSTICE.

The defendant corporation was operating a large roller skating rink in the Amphitheatre Building at Duluth. The building is bounded on the north by Superior street, on the west and east by Twelfth and Thirteenth avenues east, and on the south by London Road. The skating part of the rink is 140 feet long from west to east and is located along the south side. A few steps up is the lobby. That also is 140 feet long from west to east and 32 feet wide. North of the lobby and two steps up are two entrance lobbies, one in the northeast corner and one in the northwest corner. The latter only was open during the time in question. Adjacent to the northwest entrance along the north wall of the building were the ticket office, the manager's office, the men's lavatory, the refreshment room, and the women's lavatory, next to the northeast entrance lobby. Near the southeast corner of the lobby was the checkroom, and near the southwest corner thereof the skate room. About the center of the lobby, running east and west, was a row of six pillars. Between the pillars were two rows of seats, back to back, used for rest and for putting on and taking off the skates. The skating proper was on the main skating floor and was regulated and supervised by one or two men in uniform. The skaters were thereon required to go in the same direction. If the uniformed men blew a whistle the skaters stopped and reversed direction. It is conceded that the skating floor proper was efficiently supervised by uniformed employes. Plaintiff, a young woman 34 years of age, patronized defendant's

rink on the evening of May 26, 1938. Soon after 9:30 p. m. she decided to depart and left the skating floor, ascended to the lobby, coasted over to the women's lavatory, and, on coming out, finding the seats in the east end of the lobby pretty well occupied, concluded to go over to the steps leading down from the northeast entrance lobby and there remove the skates. As she reached the destination and was about to turn to sit down, a couple of 15- or 16-year-old boys chasing each other fell down, and one of them struck her ankle with such force as to fracture both bones just above the joint.

This action for damages followed, based on allegations that plaintiff's injury proximately resulted from defendant's negligence in that it knew and in the exercise of ordinary care should have known that boy patrons of the rink frequently engaged in boisterous conduct and skating in the lobby, and failed and neglected to prevent the same by the employment of sufficient employes to give reasonable protection to its patrons in the lobby. Defendant denied negligence and alleged that if plaintiff sustained any injuries they were due to her own carelessness, and that she assumed the risks connected with roller skating. A verdict was rendered for plaintiff. Defendant's motion for judgment notwithstanding the verdict or a new trial was denied, and defendant appeals.

There are but two assignments of error: (a) The court erred in refusing to grant defendant's motion for a directed verdict at the close of the evidence; and (b) the court erred in giving plaintiff's requested instructions Nos. 2, 3, and 4.

Defendant had a sign at either end of the lobby reading: "No Skating in Lobby." Defendant's manager testified that this did not mean and was not understood to mean that patrons could not keep their skates on when passing over the lobby to the lavatories, the refreshment room, the checkroom, the skate room, or in passing to and from the skating floor to the seats between the pillars in the lobby, but that it meant that no such skating as was done on the skating floor proper was to occur in the lobby. It was estimated that some 200 persons attended on the evening

in question and that it was an average crowd. No one person was employed whose sole duty was to maintain order in the lobby. Two young men in charge of the checkroom had instruction to warn disorderly persons; but when not busy with taking in or handing out coats or wraps the one had the privilege of skating on the skating floor, while the other had to remain in or within a few feet of the checkroom so as to protect against theft. Mr. Klapich, the ticket seller, was claimed to have authority to supervise the lobby, but he had other duties and was stationed more than 100 feet away from where plaintiff was injured, the intervening space being filled to a great extent by persons moving to and fro. Those in charge of the skate room were as far and farther away from the place of accident as was Klapich. The young lads who put on and took off the skates of patrons were in no better position. They had their duties to attend to and were of immature age. In fact there is no pretense that defendant had employed anyone whose main duty was to see that no skating or conduct endangering patrons in the lobby took place. It is true that the operator of a public amusement place is not an insurer of the safety of patrons and is not responsible for unanticipated dangers created by some one of such patrons to the injury of another. But he is obligated to use ordinary care to guard against those reasonably to be apprehended. That defendant anticipated danger from skating or playing tag on skates in the lobby is evident from the signs mentioned and from the instructions given its employes. As good a statement as can be made of the duties of one in defendant's place to patrons is this in Levy v. Jacobs, 131 Misc. 824, 825, 228 N. Y. S. 229, 230:

"While it is of course true that the defendant was not bound to insure the safety of his patrons, it is nevertheless certain it was his duty to exercise that degree of vigilance for their protection which was made necessary by his knowledge of danger. This duty was not merely passive. It was an active obligation to guard against the very risk his own evidence shows might reasonably have been anticipated."

To the same effect is Fieger v. Imperial Skating Rink, 148 Or. 137, 35 P. (2d) 683, cited by defendant.

As we view the evidence, the jury could well find that defendant knew that young lads of high-school age were among its patrons, that these were prone to chase one another or play tag skating in the lobby, and that defendant knew that such conduct was dangerous to other patrons in the lobby, that defendant did not exercise due care to prevent such skating there, and that such negligence or want of due care was the proximate cause of plaintiff's injury. We think the court rightly refused defendant a directed verdict and judgment notwithstanding the verdict.

The only other assignment of error is: "That the court erred in giving plaintiff's requested instructions numbered 2, 3, and particularly number 4." Nothing objectionable in instruction numbered 2 is suggested in the brief; but it is said this language in No. 3 placed too heavy a burden on defendant: "The care to be exercised by defendant is a care commensurate with the risks and dangers known or in the exercise of reasonable care to be anticipated." It is argued that in the exercise of reasonable care defendant could not anticipate that the boys in the lobby would suddenly start chasing one another in a game of tag or that danger or harm would result therefrom. As intimated before, not only plaintiff introduced evidence that boys had that evening and on prior occasions so skated around in the lobby, but also in the cross-examination of defendant's employes did that appear. Not much evidence is needed to convince a jury that young high-school boys when on skates will do that very thing unless well supervised and restrained. Defendant's brief does not indicate the fault in plaintiff's requested instruction numbered 4 given in this language:

"Whether or not defendant exercised reasonable care is to be determined by you from all the facts and circumstances in evidence, and in that connection you should consider the effect of the warning signs which it posted, whether or not it furnished sufficient and proper attendants in its lobby to keep and main-

tain order, and whether or not such attendants as it furnished were careless or negligent in the discharge of their duties."

Under the evidence referred to we see no impropriety or legal fault in the instruction as given. The defenses of contributory negligence and assumption of risks were submitted to the jury under instructions not excepted to, and both resolved against defendant.

Defendant cites Wells v. Minneapolis B. & A. Assn. 122 Minn. 327, 142 N. W. 706, 46 L.R.A.(N.S.) 606, Ann. Cas. 1914D, 922; Ingerson v. Shattuck School, 185 Minn. 16, 239 N. W. 667; Brisson v. Minneapolis B. & A. Assn. 185 Minn. 507, 240 N. .W. 903. In the baseball cases the patrons had the choice of protected seats and knew the risks of being struck by a deflected ball where seated. In the football case it was held that under the facts there appearing actionable negligence could not be found in defendant's failure to fence off the playing field so that the spectators could not get in the way of the rushing or tumbling players. Shields v. Van Kelton Amusement Corp. 228 N. Y. 396, 127 N. E. 261, and Frye v. Omaha & Council Bluffs St. Ry. Co. 106 Neb. 333, 183 N. W. 567, 22 A. L. R. 607, also cited, do not aid defendant. The Shields case was decided on the fact that the plaintiff, an experienced skater, chose to skate where she knew the ice was unfit. The Frye case involved defective or improper roller skate straps furnished a patron, who discovered that such they were and continued using them after an attendant had attempted to adjust them by tucking in the excessive length between the shoe and skate. The court deemed plaintiff guilty of some negligence, and under a peculiar statute of that state held [106 Neb. 336, 183 N. W. 368]: "Where the facts show, beyond reasonable dispute, that plaintiff is guilty of more than slight negligence in comparison with the negligence of defendant, the case should be taken from the jury."

The order is affirmed.