**Wan Chen WU, a minor, by her mother and natural guardian Pi Yu Tien and by her father and natural guardian, Ju Peng Wu, also known as Lilian Wu; Ju Peng Wu, individually; and Pi Yu Tien, individually, Plaintiffs,**

v.

**SHATTUCK–ST. MARY'S SCHOOL, a Minnesota corporation, and Greg Paine, Defendants.**

**Civ. No. 03–4870(DWF/JSM).**

United States District Court, D. Minnesota.

March 2, 2005.

---

James S. Ballentine, James R. Schwebel, William R. Sieben, Schwebel Goetz & Sieben, Minneapolis, MN, for Plaintiffs.

Louise A. Behrendt, Kenneth W. Dodge, Stich Angell Kreidler & Dodge, Minneapolis, MN, for Defendant Shattuck–St. Mary's School.

Daniel A. Haws, Stacy E. Ertz, Melanie P. Persellin, Murnane Conlin White & Brandt, St. Paul, MN, for Defendant Greg Paine.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on January 7, 2005, pursuant to Motions for Summary Judgment brought by Defendants Shattuck–St. Mary's School ("SSMS") and Greg Paine (collectively "Defendants"). Specifically, Defendants contend that they are entitled to summary judgment as to Plaintiff Wan Chen Wu's ("Plaintiff") negligence claims based on the doctrine of primary assumption of risk. Defendants also contend that they are entitled to summary judgment as to Plaintiff's joint enterprise claim. Consistent with the Court's ruling at oral argument on this matter, the Court denies Defendants' Motion for Summary Judgment.

### Background

SSMS is a college preparatory boarding and day school enrolling students in grades 6–12. SSMS's students during the 2002–2003 academic year came from 32 states and 12 countries. SSMS is accredited by the Independent School Association of Central States.

In 2002, Plaintiff learned about SSMS through her friend, Jill Chen. Jill Chen was planning on transferring to SSMS and she wanted to know whether Plaintiff would be interested in joining her. Thereafter, Jill Chen's mother introduced Plaintiff's mother to a consulting company that recruited students in Taiwan for SSMS. The consulting company tested Plaintiff on her English, speech, and writing skills in January 2002. Plaintiff then traveled to SSMS with Jill Chen's mother in May 2002, for further testing. Plaintiff enrolled at SSMS in the fall of 2002.

Upon admission to SSMS, Plaintiff's mother signed an enrollment contract ("the Enrollment Contract") which provides:

In signing this contract, I subscribe to the terms as herein set forth. I furthermore agree to hold Shattuck–St. Mary's School harmless from all damages arising from personal injury or property loss. I understand that this contract applies to the 2002–3 academic year only and that no further obligations by either party are express or implied.

(Affidavit of Louise A. Behrendt (hereinafter "Behrendt Aff."), ¶ 3, Ex. B ("Enrollment Contract").)

During her deposition, Plaintiff's mother agreed that she signed the Enrollment Contract while in Taiwan. She testified that the document was not translated for her and that she did not fully understand what she was signing. She also testified that she signed the Enrollment Contract on behalf of Plaintiff's father.

In addition, Plaintiff and her mother signed a document entitled "2002–2003 MSHSL Athletic Eligibility Statement" ("Athletic Eligibility Statement") which provides:

As a student participating in my school's interscholastic activities, I understand and accept the following responsibilities:

. . . .

—I will be fully responsible for my own actions and the consequences of my actions.

. . . .

—I will respect and obey the rules of my school and the laws of my community, state and country.

*Informed Consent:* By its nature, participation in interscholastic athletics includes risk of injury and the transmission of infectious diseases.... Although serious injuries are not common ..., it is impossible to eliminate all risk. Participants have the responsibility to help reduce that risk. Participants must obey all safety rules.... PARENTS, GUARDIANS OR STUDENTS WHO MAY NOT WISH TO ACCEPT THE RISK DESCRIBED IN THIS WARNING SHOULD NOT SIGN THIS FORM.

(Behrendt Aff., ¶ 4, Ex. C ("Athletic Eligibility Statement").) Plaintiff's mother testified that she did not specifically remember the form, but that she did sign it. She also agreed that the signature on the "student" line looks to be Plaintiff's.

Plaintiff began school at SSMS in the fall of 2002. She took courses in the fall and winter semesters in physics, chemistry, pre-calculus. During the winter semester, Plaintiff also began taking an "Instructional Golf" class. The golf class was introduced by Headmaster Dennis Brown as an elective course.

Brown hired Paine to teach the golf class at SSMS. Paine is a member of the PGA, classification A–1, which means that he is a head golf professional at a green grass facility. Paine participated in internships that were involved with junior golf programs from 1992 to 1996. Paine has taught golf since 1997.

Before the course could begin, SSMS's facilities needed to be outfitted for the golf class. Paine, Brown, and John Sumner, SSMS's athletic director, decided that the golfing facility would be placed in the basement of the SSMS gymnasium. Brown told Paine that SSMS wanted the facility to be able to accommodate golf, softball, and baseball. Therefore, Paine designed the golf cage so that it would be an open area 33 feet by 60 feet with netting along the eastern wall of the cage. Paine contacted a golf supply company to purchase netting for the golf cage. Six mats were placed alongside the western side of the

golf cage with students hitting balls to the east. Students used actual golf balls during the class as opposed to whiffle or "practice" golf balls.

During his deposition, Paine testified that he set out several safety rules for the students in the golf class, including two primary rules. First, students were not to swing their golf clubs while another student was around. Second, students were not to retrieve their golf balls or otherwise get in front of another student who was hitting golf balls. In order to ensure that students were not hit by golf balls, Paine instructed the students that the class as a whole was to go out together to retrieve their golf balls, or a student could advise the others in the netted area to stop hitting golf balls while they retrieved their golf balls. Paine testified that he made it clear to the students that they could be severely injured if they were hit by either a golf club or a golf ball. Paine testified that he repeated these rules and warnings periodically to the class. Paine also testified that he reprimanded students who violated these rules.

The students in Paine's course provide differing testimony as to the clarity of Paine's rules and the consistency with which the rules were enforced. Keiko Takeuchi and Yu–Chun Chen, students in the golf class, testified that students would often retrieve their golf balls from the netting whenever they felt it was safe to do so. Takeuchi and Chen also testified that Paine was aware of this practice and that he did not object so long as the student retrieving the golf balls was far enough away from the student or students who were hitting golf balls.

On January 17, 2003, Plaintiff was struck in the temple by a golf ball while she was in the golf cage retrieving her golf balls. Prior to the accident, Paine, Plaintiff, and Luke Sorenson, a student in the golf course, were in the golf cage. Paine had been giving Plaintiff individual instruction at the southernmost mat. Paine then moved three mats to the north and began to give Sorenson instruction regarding Sorenson's swing. Sorenson would address the ball, bring his club back, be put into position by Paine, and then swing when he was instructed to do so. Sorenson had hit two to four balls into the net before he hit the ball that struck Plaintiff.

Sorenson saw the golf ball hit Plaintiff while she was attempting to retrieve golf balls from the southeast corner of the net. Sorenson and Paine do not recall Plaintiff saying anything prior to her attempt to retrieve her balls. Sorenson and Paine also deny that they saw Plaintiff enter the netted area.

As a result of the accident, Plaintiff suffered a severe brain injury. On August 8, 2003, Plaintiff and her parents filed this suit against SSMS and Paine alleging that the Defendants' negligence caused Plaintiff's injuries. Plaintiff also alleges that SSMS breached its enrollment contract.

## Discussion

### I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir.1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.' " *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank,* 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *See Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik,* 47 F.3d at 957.

## II. Doctrine of Primary Assumption of Risk

Defendants contend that Plaintiff's claims are barred by the doctrine of primary assumption of risk. Primary assumption of risk is applicable where parties have "voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks." *Olson v. Hansen,* 299 Minn. 39, 216 N.W.2d 124, 127 (1974). Primary assumption of risk is "not so much an affirmative defense as an expression of the idea that the defendant owes a limited duty of care to the plaintiff with respect to the risk incident to their relationship." *Id.* The question of whether a party has assumed the risks of an activity is usually reserved for a jury, unless the evidence is conclusive. *See Hollinbeck v. Downey,* 261 Minn. 481, 113 N.W.2d 9, 13 (1962).

Primary assumption of risk is rarely applied by Minnesota courts. *See Swagger v. City of Crystal,* 379 N.W.2d 183, 185 (Minn.Ct.App.1985). However, the courts

have recognized its applicability to cases involving licensees upon another's property, *e.g., Sandstrom v. AAD Temple Bldg. Ass'n,* 267 Minn. 407, 127 N.W.2d 173 (1964); or patrons and participants of sporting events involving inherently dangerous activities. *See Jussila v. U.S. Snowmobile Ass'n,* 556 N.W.2d 234 (Minn. Ct.App.1996) (spectator at snowmobile race); *Alwin v. St. Paul Saints Baseball Club, Inc.,* 672 N.W.2d 570 (Minn.Ct.App. 2003) (spectator at baseball game); *Modec v. City of Eveleth,* 224 Minn. 556, 29 N.W.2d 453 (1947) (spectator at hockey game); and *Grisim v. TapeMark Charity Pro–Am Golf Tournament,* 415 N.W.2d 874 (Minn.1987).

The doctrine of primary assumption of risk does not bar a claim where a defendant's conduct has enhanced the risk of an activity. *See Rusciano v. State Farm Mut. Auto. Ins. Co.,* 445 N.W.2d 271, 273–74 (Minn.Ct.App.1989). The doctrine also does not relieve a defendant of its duty to supervise sporting activities, (*see, e.g., Johnson v. Amphitheatre Corp.,* 206 Minn. 282, 288 N.W. 386 (1939) (skate rink owner had an "active obligation" to guard against anticipated risks)), or to maintain its facilities in a safe, working condition. *See Wagner v. Thomas J. Obert Enter.,* 396 N.W.2d 223, 226 (Minn.1986).

Defendants assert that they are entitled to summary judgment as to Plaintiff's claims because Plaintiff assumed the risk of injury when she left her golf mat and entered the golf cage's netted area to retrieve golf balls while Sorenson was practicing his golf swing. Defendants contend that Plaintiff was aware of the risk associated with her conduct as she had received previous instruction from Paine regarding the proper method of retrieving golf balls. Defendants also assert that Plaintiff and the other students in the golf class were aware of the danger associated

with retrieving golf balls while students were still hitting in the golf cage. Finally, Defendants claim that Plaintiff could have avoided the risk of injury by waiting until Sorenson had finished hitting his golf balls.

In contrast, Plaintiff contends that the doctrine of primary assumption of risk is not applicable to her negligence claims. Plaintiff asserts that the Defendants' negligent design and construction of the golf cage made the golf cage inherently dangerous. Plaintiff also asserts that the Defendants were negligent in their supervision of the golf class. In support of these assertions, Plaintiff has submitted affidavits from a number of individuals familiar with golf cage design, golf cage construction, and the instruction and supervision of students. Each of these affidavits sets out precautions that should have been taken with regard to the golf class.

After a review of the case law and the parties' memoranda, the Court finds that Plaintiff's negligence claims are not barred by the doctrine of primary assumption of risk. The Court finds that the Plaintiff's claims as stated in her Complaint are more akin to those cases involving enhancement of risk, negligent maintenance of a facility, or negligent supervision of a sporting activity. Accordingly, the Court believes that the apportionment of negligence between the parties is an issue that should be left to a jury. Thus, the Court denies the Motion for Summary Judgment brought by the Defendants as to this issue.

### III. Effect of the Exculpatory Clauses

■ SSMS contends that the Plaintiff's claims are barred by the exculpatory provisions in SSMS's Enrollment Contract and its Athletic Eligibility Statement. Minnesota recognizes the validity of exculpatory clauses, but such clauses are disfavored and "strictly construed against the benefitted party." *Schlobohm v. Spa Pet-*

*ite, Inc.*, 326 N.W.2d 920, 923 (Minn.1982). An exculpatory clause may be unenforceable if: 1) it is ambiguous in scope or purports to release a party from liability for intentional, willful, or wanton acts; 2) there was a disparity in bargaining power between the parties to the agreement; or 3) the type of service being offered or being provided by the exculpated party is either a public or essential service. *See Beehner v. Cragun Corp.*, 636 N.W.2d 821, 827 (Minn.Ct.App.2001).

■ As a preliminary matter, the Court finds that the Athletic Eligibility Statement does not preclude Plaintiff's claims. The Athletic Eligibility Statement expressly provides that it applies only to "interscholastic" activities. Plaintiff was injured while taking part in a class offered by SSMS. Therefore, by definition, Plaintiff was injured in an *"intra-*scholastic" activity. Thus, the Athletic Eligibility Statement's exculpatory clause does not bar Plaintiff's claims.

■ An exculpatory clause is ambiguous when it is susceptible to more than one reasonable construction. *See Collins Truck Lines, Inc. v. Metro. Waste Control Comm'n*, 274 N.W.2d 123, 126 (Minn.1979). Plaintiff asserts that the portion of the Enrollment Contract releasing SSMS from liability is ambiguous and overbroad because it is not limited to instances of negligence but instead could be read to include intentional, willful, or wanton acts. SSMS, on the other hand, asserts that such an interpretation of the Enrollment Contract is not reasonable.

The Enrollment Contract provides that the signator "agree[s] to hold Shattuck–St. Mary's School harmless from all damages arising from personal injury or property loss." (Behrendt Aff., Enrollment Contract.) A reasonable interpretation of the Enrollment Contract is that Plaintiff's par-

ents, or any parents signing the Enroll-ment Contract on behalf of their children, are barred from bringing claims against SSMS for any actions of its agents or employees, including intentional, willful, or wanton acts. Because the Enrollment Contract's exculpatory provision purports to release SSMS from liability for inten-tional, willful, or wanton acts, the Court finds that the Enrollment Contract is not enforceable as a matter of law.[1]

## IV. Joint Enterprise

▮▮▮▮ The Defendants also assert that they are entitled to summary judg-ment on Plaintiff's joint enterprise claim. A joint enterprise has two elements: 1) a mutual understanding for a common pur-pose; and 2) an equal right to a voice in the direction and control of the means used to carry out the common purpose. *See Ruth v. Hutchinson Gas Co.*, 209 Minn. 248, 296 N.W. 136 (1941). When a joint enterprise is found, the fault of one party may be imputed to another party. *See id.*

Defendants contend that neither of joint enterprise's elements are present in this case. First, the Defendants assert that SSMS and Paine had different purposes in their involvement in the golf class. SSMS asserts that it offered the golf class to better its students' educational experience. Paine asserts that he accepted the position only because he was paid to do so by SSMS. Second, the Defendants assert that they were not engaged in a joint enter-prise as evidenced by the fact that Paine possessed no right of control or manage-ment of the golf class. Paine contends that his lack of control is apparent because

he: 1) did not share any of the golf class's expenses; 2) did not decide when the golf class would take place; and 3) was super-vised by Brown and Sumner.

In contrast, Plaintiff asserts that SSMS and Paine had a common purpose and that they possessed similar rights in the di-rection and control of the golf class. Plaintiff contends that both SSMS's and Paine's purpose was to conduct a golf class in a safe manner. Plaintiff contends that SSMS and Paine exercised their rights of control or direction of the golf class in a variety of ways. Specifically, Plaintiff points out that Paine, Brown, and Sumner designed the golf cage together and that SSMS's staff supervised Paine's work with the golf class's students.

▮▮▮▮ The Court finds that SSMS and Paine are not entitled to summary judg-ment as to Plaintiff's joint enterprise claim. The Court finds that SSMS and Paine did share a common purpose with regard to the golf class. The Court also finds that sufficient evidence exists in the record to support Plaintiff's claim that both SSMS and Paine exercised some de-gree of control over the direction of the golf class. Accordingly, Defendants' Mo-tion for Summary Judgment is denied as to this claim.

### Conclusion

The Court believes it is in the best interests of the parties to negotiate a reso-lution of this dispute among themselves. As the parties are already aware, Magis-trate Judge Janie S. Mayeron is available to assist in the negotiation of a settlement

---

1. Based on its determination that the Enroll-ment Contract's exculpatory provision is am-biguous and overly broad in scope, the Court need not examine the relative levels of bar-gaining power between SSMS and Plaintiff's parents at the time the Enrollment Contract was signed. Nonetheless, the Court questions whether a Taiwanese woman signing a pre-printed form written in English without the aid of a translator had much, if any, bargain-ing power with regard to the Enrollment Con-tract's terms.

should the parties find such services helpful. If the Court may be of assistance in this matter, the parties should contact Lowell Lindquist, Calendar Clerk for Judge Donovan W. Frank at 651–848–1296, or Katie Haagenson, Calendar Clerk for Magistrate Judge Janie S. Mayeron at 651–848–1190.

For the reasons stated, **IT IS HEREBY ORDERED**:

1. Defendant Shattuck–St. Mary's School's Motion for Summary Judgment (Doc. No. 31) is **DENIED**.

2. Defendant Greg Paine's Motion for Summary Judgment (Doc. No. 24) is **DE-NIED**.